# CIRCUIT COURT OF ROCKINGHAM COUNTY

Piedmont Associates, Inc.,
of North Carolina
and Garry L. Simmons

v.

William W. Little

September 13, 1999

Case No. (Law) 11586

BY JUDGE JOHN J. MCGRATH, JR.

This matter is before the Court on the Defendant's Motion for Summary Judgment raising an issue with the fully developed factual record which had previously been before the Court on Demurrer.

*Facts*

The facts involved in this motion are straightforward and not really in dispute. Piedmont Associates, Inc., of North Carolina (hereinafter "Piedmont Associates") is a real estate developer which had a number of lots for sale in an area known as the Battlefield Estates Subdivision in Rockingham County, Virginia. On December 27, 1995, Piedmont Associates signed a short two-page contract with William W. Little, a contractor from Staunton, Virginia, agreeing to sell Mr. Little thirteen of the lots located in the Battlefield Estates Subdivision for the gross sum of $300,000.00. Added to the second page of the typed contract was a handwritten statement initialed by both parties which said "seller's agent is to have exclusive right to sell first five (5) houses to be constructed by buyer. Listed @ six percent (6%) commission."

Shortly after this contract was signed, an addendum was entered into on January 19, 1996, signed by both parties, which reads as follows:

The parties hereto acknowledge that the following terms as contained in the contract of purchase dated December 27, 1995, shall survive closing and continue in full force and effect:

"Seller's agent is to have exclusive right to sell first five (5) houses to be constructed by Buyer, listed @ six percent (6%) commission."

On or about September 24, 1996, the Defendant sent a letter to the Plaintiff purporting to terminate the contract which gave the Plaintiff the exclusive right to market and sell houses constructed by the Defendant at the Battlefield Estates Subdivision. Some time in May of 1998, the Defendant sold the first of the houses constructed on these thirteen lots for the sum of $181,000.00 and had not used the Plaintiff as the agent to sell the property. The Plaintiff made a demand for payment of its commission and other damages for breach of contract. This demand was rejected by Defendant.

Discovery in this matter has been taken, and for the purposes of this summary judgment, Defendant has alleged that the uncontroverted facts developed during discovery show that there was no termination date inserted in the contract or agreed on by the parties when the exclusive brokerage contract was entered into. Not surprisingly, the Plaintiff's view is that its exclusive right to act as agent in the sale of the first five houses was to continue for a "reasonable period of time" after the consummation of the underlying contract. The Defendant's factual position is that the Plaintiff did not perform upon the contract thus requiring the Defendant to terminate Plaintiff as his exclusive agent.

However, for the purposes of the Motion for Summary Judgment, Defendant asserts that under Virginia Code § 54.1-2137(A) and (B), all brokerage relationships must have a "definitive termination date." The Defendant's reading is that Subsection (B) requires that all real estate brokerage contracts have a definitive date on which they terminate, and if they do not, the law specifically provides that the brokerage relationship "shall terminate ninety days after the date the brokerage relationship was entered into." See § 54.1-2137(B).

Plaintiff concedes that if the statute is read to mean that all brokerage contracts must have a fixed date of termination, i.e., a day, a month, and a year or they will be construed to end ninety days after the creation, then the Plaintiff cannot prevail in this action because indisputably the brokerage contract entered into did not have an actual date on which it terminated. Instead, it provided that it would terminate upon the sale of the first five houses which were to be built in the Battlefield Estates Subdivision.

This case raises what appears to be a case of first impression in Virginia in that neither parties nor the Court were able to find any precedent governing the correct interpretation of "a definite termination date" as used in § 54.1-2137(B) of the Code of Virginia.

The Court having examined the structure of § 54.1-2137 is convinced that the legislature did not intend or mean this statute to require that every brokerage contract have a date certain (i.e., a month, day, and year) on which it terminates but that a brokerage contract needs to have only a stated date or the occurrence of a specified event from which a fact finder can reasonably determine if contractual obligations have been timely fulfilled. In looking at Subsection (A) of § 54.1-2137, it is clear that the legislature contemplated that brokerage contracts could continue "until (i) completion of performance in accordance with the brokerage relationship ... ." By that language, the legislature clearly appears to have contemplated that parties can enter into brokerage contracts which have as their termination point the occurrence of a certain event or events. That is exactly the type of contract that was entered into in this case in which the plaintiff arguably gave consideration for the exclusive right to sell the first five homes but that no specific time was set down in which the homes would have to be built and then sold.

However, the Plaintiff essentially argues that this was more than an "at will" contract for the providing of personal services in that the Plaintiff has alleged that he reduced the price of the lots in return for the agreement to have the right to sell at a six percent commission the first five homes that were built. It is Plaintiff's position that under the law, he had a reasonable time within which to perform these services and receive the promised remuneration. *Cf. Plaskitt v. Black Diamond Trailer Co.*, 209 Va. 460 (1968). There is a hotly-contested dispute between the parties as to why the houses were not built and whether or not Plaintiff was in a position to properly market the homes. However, these are matters of fact that need to be determined by the trier of fact and cannot be decided on a Motion for Summary Judgment.

The Court's holding is that this real estate brokerage contract did not terminate pursuant to § 54.1-2137(B) ninety days after its creation on December 27, 1995; and therefore, the Defendant's Motion for Summary Judgment is hereby denied.